**In re Jackie L. YOKLEY, Fay B. Yokley, Debtors.**

**FARMERS NATIONAL BANK, Plaintiff,**

v.

**Jackie L. YOKLEY and Fay B. Yokley, Defendants.**

Bankruptcy No. 18400573.

Adv. No. 1850009.

United States Bankruptcy Court, W.D. Kentucky.

May 23, 1986.

Scott A. Bachert, Bowling Green, Ky., for plaintiff.

J. Richard Downey, Franklin, Ky., for defendants.

Henry Dickinson, Glasgow, Ky., trustee.

MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Rare is the case in which a bankruptcy court will completely deny a discharge to a

bankrupt petitioner. Such an extraordinary measure is justified, we have held, "only where there is a preconceived scheme to thwart the rights of creditors and the processes of this court, or such a cavalier disregard of duty as to constitute the legal equivalent of such motives".[1] The latter state of affairs, that is, a disregard of the duty of accountability so striking as to create a presumption of wrongful intent, attends this case, as the following facts will demonstrate.

In November of 1984, the debtors, Jack and Fay Yokley, filed a petition under Chapter 7 of the Bankruptcy Code. In the three months immediately preceding the Yokley's filing, Jack Yokley (debtor)[2] made the following series of withdrawals from two bank accounts:

(1) On August 3, 1984 a check was written on the "J.L. Yokely Farms" account in the amount of $9,000. The check was made payable to cash and was signed by the debtor. Although the notation on the check indicated it was "for wheat", the debtor testified that he had no idea what this $9,000 was used for, other than it must have been put into his farming operation.

(2) On November 5, 1984, a check was written on the "Mr. and Mrs. J.L. Yokley" account in the amount of $2,000. This check was made payable to the Franklin Bank and was signed by the debtor. Although the notation on the check indicated that it was "for farm fuel", the debtor testified at trial that the check was actually a payment of principal and/or interest on a note owed to the Franklin Bank. The debtor's Chapter 7 statement of affairs does not list this payment, and Leon Page, President of Franklin Bank, directly contradicted the debtor's testimony that the $2,000 was used to pay off part of the debtor's note. Mr. Page testified that the bank records showed that this check had been exchanged for cash at one of the Franklin Bank's branch offices.

(3) On November 5, 1984, a check was written on the "J.L. Yokley Farms" account in the amount of $2,529.39. This check was signed by the debtor's wife, Fay Yokley and made payable to the debtor. The notation on the check indicated that it was "for seed corn". Mrs. Yokley was unable to recall why the check was written, and the debtor testified that he believed that the check has been made to repay him for some seed corn he had purchased sometime earlier in the year. Apart from this self-serving testimony, the debtor had no receipts or other documents which would evidence a purchase of seed corn. Mr. Page testified that the debtor cashed this check at a Franklin Bank branch office. The debtor's only explanation concerning the disposition of the proceeds of this check was that the money was put back into the farming operation.

(4) On October 23, 1984 the debtor withdrew, by check, $8,000 from the J.L. Yokley Farm Account. The debtor testified that he lost this $8,000 in Las Vegas and Atlantic City in an attempt to raise cash for his farming operations. This loss was not revealed in the debtor's statement of affairs. The debtor claimed at trial that he drove to Las Vegas and back and flew to Atlantic City but had no records to verify either the two trips or his gambling losses. The debtor stated that he did not report this $8,000 gambling loss on his statement of affairs, in order to hide the fact from his wife. The debtor's wife testified that she did remember the debtor leaving home for several days without telling her where he went, but also stated that she neither attempted to locate the debtor during this period nor questioned the debtor about his disappearance.

At trial the debtor offered no evidence to support his explanations of what happened to the missing $22,000 other than those

**1.** *In re Brame,* 23 B.R. 196, 200 (Bkrtcy.W.D.Ky. 1982).

**2.** At trial we dismissed the 727 complaint against Fay Yokley for lack of evidence. We also dismissed a Section 523(a)(2) complaint against Jack and Fay Yokley because the bank failed to show reasonable reliance.

written on the checks themselves, the inadequacy of which we have already noted.

\* \* \* \* \* \*

■ Section 727(a)(5) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

A party objecting to a debtor's discharge has the burden of proving its objection.[3] However, once the objecting party meets its initial burden or proof and establishes a prima facie case against the debtor under § 727(a)(5), the burden of proof then shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner.[4]

■ The plaintiff, Farmers National Bank (Farmers) has presented an impressive 727(a)(5) case against the debtor. Its evidence showed that the debtor made four large and unexplained withdrawals from two of his bank accounts in the three months preceding his bankruptcy[5] and that neither the debtor's records nor his bankruptcy schedules disclose what happened to the cash he obtained through these withdrawals.

At trial, the debtor offered only vague and general explanations concerning the disposition of the "missing" $21,529.39. The debtor testified that he "believed" that $11,529.39 was used to reimburse him for a purchase of wheat and seed corn he had made earlier in the year. No documentary evidence to support that claim was submitted.[6] The debtor also testified that the $2,000 check was used to repay part of a note owed to the Franklin Bank. This testimony was completely refuted by the president of the bank, who testified that this check was *cashed* by the debtor and was not applied to the note. Finally, the debtor claimed that he lost the remaining $8,000 in two gambling trips to Las Vegas and Atlantic City. As with his other explanations, the debtor was unable to produce any documents which would tend to prove he either made the trips or lost the money.

After reviewing the debtor's testimony concerning the disposition of the missing $21,529.39, we find that he has failed to satisfactorily explain the "loss" of these funds and must be denied a discharge in bankruptcy. It is an established rule of law that a trial judge is in the best position to evaluate the credibility of a witness,[7] and after assessing the demeanor of the debtor and the content of his testimony, we believe that little, if any, weight can be given to his explanations for the loss of his assets. Not only were those explanations vague, indefinite and uncorroborated by any documentation,[8] but portions of his testimony, particularly that concerning the repayment of the Franklin Bank loan, were obviously false. In order for a debtor's explanation of a loss or deficiency of assets

---

3. Bankruptcy Rule of Procedure 4005 (1985). *See also In re Chalik,* 748 F.2d 616 (11th Cir. 1984); *In re Brame,* 23 B.R. at 200.

4. *In re Chalik,* 748 F.2d at 619; 4 *Collier on Bankruptcy* 727.08 (15th ed. 1984) *See also In re Devers,* 759 F.2d 751, 754 (9th Cir.1985), ("it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case").

5. *See In re Martin,* 698 F.2d 883, 886 (7th Cir. 1983) ("[I]t would not constitute a prima facie case under Section 727(a)(5) to merely make an allegation of a failure to explain [a] loss or deficiency of assets. . . .")

6. During his testimony at trial the debtor admitted that the notation on the $2,000 check written on November 5, 1984 was incorrect. This admission shows that the notations on the debtor's checks are unreliable and should not be given any weight by the court.

7. *In re Chalik,* 748 F.2d at 619; *In re Martin,* 698 F.2d at 885.

8. *In re Chalik,* 748 F.2d at 619; *In re Reed,* 700 F.2d 986, 993 (5th Cir.1983); *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966).

to be satisfactory, the proffered explanation must be convincing to the court.[9]

Here the meager, uncertain and contradicted testimony of the debtor does not amount to a satisfactory explanation of the disappearance of nearly $22,000 on the eve of the debtor's bankruptcy. We must therefore deny the debtor a discharge under the provisions of Section 727(a)(5) of the Bankruptcy Code. An order reflecting these findings will be entered with this opinion.

---

**9.** *In re Shapiro & Ornish,* 37 F.2d 403, 406 (N.D.Tex.1929), *aff'd,* 37 F.2d 407 (5th Cir.1930). 11 U.S.C. § 727(a)(5) is substantially the same as Section 14(c)(7) in the old Bankruptcy Act, making cases decided under the former Bankruptcy Act relevant. *In re Chalik,* 748 F.2d at 619, n. 4.