**In the Matter of Tina Darlene DUPREE, Debtor.**

**HUNTINGTON CENTER PARTNERS, LTD., Plaintiff,**

**v.**

**Tina Darlene DUPREE, Defendant.**

Bankruptcy No. 95–82498.
Adv. No. 95–80292.

U.S. Bankruptcy Court,
N.D. Alabama,
Northern Division.

July 11, 1996.

Stuart Maples, Huntsville, AL, for Plaintiff.

Randall O. Gladden, Huntsville, AL, for Debtor/Defendant.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on the complaint of Huntington Center Partners, Ltd. (hereinafter "Huntington"), requesting the Court to determine that certain debts owed by the debtor/defendant, Tina Darlene Dupree (hereinafter the "debtor"), are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (6), and seeking a determination by this Court that the discharge of the debtor is due to be denied pursuant to 11 U.S.C. § 727(a)(2), (3), (4)(A), (5). Huntington further seeks the entry of a judgment against the debtor in the amount of $58,673.60. The hearing in this matter was held on the 10th day of May, 1996. This is a core proceeding under 28 U.S.C. § 157(a), (b)(2)(I)–(J), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The Court has considered the complaint, the response, the documents submitted in support thereof, the arguments of counsel, and finds and concludes as follows.[1]

## I. FINDINGS OF FACT

On September 18, 1995, the debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Prior to filing bankruptcy, the debtor was engaged in the video tape sales and rental business as the sole proprietor of a video rental store known as Berry's Video # 2.[2] Huntington is engaged in the business of managing commercial real estate, and is debtor's only unsecured creditor.[3]

---

1. This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052, and Federal Rule of Civil Procedure 52.

2. Shirley Berry, the debtor's mother, owns the video rental store known as Berry's Video # 1.

3. The debtor listed two secured creditors, GMAC and American Bankers Financial Services ("American"), in Schedule D attached to her petition. The debtor indicated therein that the debt to American for one 1985 Riveroaks mobile home is in the possession of and is being paid for by a Randall Berry. In her Statement of Intention, the debtor further indicated that she intend-

On April 3, 1992, debtor executed a Lease Agreement with Firstco Service Corporation for the lease of certain property located at 11220 Memorial Parkway, Huntsville, Alabama, Suite I of Huntington Center to operate her video rental store. Huntington purchased the shopping center in August of 1993, and acquired the subject lease.

On June 2, 1995, Huntington's management and leasing agent, InterSouth Properties, LLC ("InterSouth"), mailed a certified letter to the debtor in which InterSouth informed the debtor that she was two months delinquent on her rent and common area maintenance payments. InterSouth further explained that collection actions would be pursued if full payment was not received by June 10, 1995.

On June 6, 1995, debtor closed the video store, masked the store windows with black plastic, and placed a sign in the window indicating that the store was "Closed for Inventory." Approximately two days after the debtor closed the store for inventory, she sold the inventory of 10,000 video tapes to an entity known as Amps. The debtor received a cashiers' check for $30,000.00 from the purchaser in consideration for the transfer. Rather than deposit the same in her business or personal accounts, the debtor cashed the check at AmSouth Bank taking $15,000.00 to $20,000.00 in cash and two (2) or three (3) $5,000.00 cashiers' checks to her home. All disbursements of the $30,000.00 hereinafter described were made by her with said cashiers' checks and cash. The debtor also removed shelves, VCR's, and two computers from the premises;[4] provided her accoun-

tants with all documents related to the business; and abandoned the premises.

Although Huntington possessed a landlord's lien upon the video tapes, the debtor did not notify Huntington nor InterSouth of the sale, and does not have any documentation evidencing the transaction. The debtor admitted that she was behind in her payments to Huntington at the time of the transfer, but testified that she failed to notify Huntington of the sale because she was unaware that the lease created a lien upon the property in favor of Huntington. (Deposition of Dupree, page 23).

The debtor did not obtain written consent from Huntington to close the store as required by the Lease Agreement, and, instead failed to notify Huntington regarding her decision to close. The debtor testified, however, during her deposition that the decision to close "wasn't really planned. I didn't really know I was going to close until that day. I just knew I couldn't get out. I didn't have any other options." (Deposition of Dupree, page 23).

Upon discovery of debtor's abandonment of the premises, InterSouth, by certified letter dated June 13, 1995, accelerated the payments under the lease in accord with the terms of the lease. InterSouth also informed the debtor that the sum due under the accelerated lease was $58,673.60.[5]

Debtor made no effort to pay the subject debt or even a portion thereof, but choose instead to bring current various obligations, including the repayment of a loan from a

---

ed to reaffirm the debt to GMAC for one 1994 Chevrolet Beretta. The debtor listed the Department of the Treasury, Internal Revenue Service, and the State of Alabama, Department of Revenue as unsecured priority creditors in the amount of $509.16. Accordingly, debtor filed for bankruptcy relief solely to discharge the subject debt to Huntington.

4. The debtor transferred the computers to her mother, Shirley Berry, for use in Berry's Video # 1. According to the debtor, Shirley Berry is the actual owner of the computers. (Deposition of Dupree, page 16). There are, however, no documents evidencing an agreement between the debtor and Shirley Berry regarding the computers.

5. At the hearing, Allen Jenkins ("Jenkins"), a general partner of Huntington, testified that the aggregate rent and common area maintenance owed to Huntington pursuant to the lease totals $46,259.04. The difference between said amount and the judgment requested by Huntington constitutes attorneys' fees for the prosecution of this case. The debtor argues that the amount due under the lease was mitigated by Huntington's lease of the premises to a Michael and David Warren. However, the Warrens abandoned the premises after paying only four months rent. Jenkins testified that Huntington spent more money improving and renovating the premises than the amount of rent collected from the Warrens. Accordingly, the evidence presented demonstrates that no mitigation of Huntington's loss under the debtor's lease occurred.

Kenneth Berry in the amount of $1,000.00.[6] Huntington was the only creditor that debtor failed to pay.

In addition to satisfying obligations to various creditors, debtor loaned her sister, Donna Parsons, $1,500.00 from the $30,000.00 video tape proceeds, and spent $1,700.00 of the proceeds on a vacation to the Smokey Mountains in July of 1995. The debtor also apparently paid her attorney for filing the present petition with a portion of the $30,000.00. (Deposition of Dupree, page 34).

The debtor purchased a 1980 El Camino automobile for her husband after the debtor filed for bankruptcy. Although the debtor could not remember the exact date of the purchase, she testified in her deposition that the purchase occurred after she filed her bankruptcy petition, and that she paid $3,750.00 in cash for the automobile. (Deposition of Dupree, page 35–6). Debtor further testified that she utilized at least a portion of the proceeds to pay various post-petition expenses such as rent and utilities. Yet, debtor refused to specify the amount of money remaining from the $30,000.00 sale of inventory on the date she filed her bankruptcy petition.[7]

The debtor maintains a joint checking and savings account with her husband at Colonial Bank, and a business checking account at AmSouth Bank. In Schedule B of debtor's bankruptcy petition, debtor indicated that she had $15.00 in "cash on hand," $650.00 in her joint checking account at Colonial, and $110.00 in her joint savings account at Colonial. Debtor failed to disclose the AmSouth checking account in Schedule B. When questioned regarding her failure to disclose the business account, the debtor stated as

follows: "Well this is personal; that was business." (Deposition of Dupree, page 46).

The debtor also failed to disclose the $30,000.00 sale of inventory in her Statement of Financial Affairs. Question ten (10) in the Statement of Financial Affairs attached to debtor's petition, contains the following instructions:

> List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.

In response to this question, debtor answered "none," notwithstanding the transfer of approximately 10,000 video tapes and two computers. When counsel for Huntington questioned debtor during her deposition regarding debtor's disclosure of the sale of the video tapes in her bankruptcy petition, debtor's counsel responded first that he was certain that the sale was disclosed in the debtor's bankruptcy petition, and then that the failure to include the sale was inadvertent. Debtor's counsel further indicated that it was unnecessary to list the transfer of the computers in light of the debtor's assertion that the computers belonged to her mother.

## II. CONCLUSIONS OF LAW

### A. Sanctions for Debtors failure to comply with Pretrial Order

■ As a preliminary matter, the Court believes that it is appropriate to address the sanctions imposed upon the debtor during the trial. The Pretrial Order, dated February 15, 1996, in pertinent part directed each party as follows:

> A. I have no idea.
> Q. Where would that money have been on September 18th when you filed bankruptcy?
> A. Just about, right around—It was basically, most of it gone.
> Q. Where would the money have been kept, any amount, that would have been left on that date?
> A. At home.
> (Deposition of Dupree, page 43).

---

6. Debtor stated in her deposition that she does not remember whether the loan repayment occurred pre-petition or post-petition. (Deposition of Dupree, page 24). The repayment was not listed in debtor's Statement of Financial Affairs.

7. Debtor provided the following answers during her deposition to counsel's questions regarding the amount and location of any funds remaining from the sale of debtor's video tapes:
 > Q. How much money do you believe you had remaining from the $30,000.00 at the time you filed bankruptcy?

6. Premark exhibits for introduction into evidence with sequential designations accompanied by an indexed list of the exhibits. Exchange said list with opposing counsel or parties if not represented by counsel no later than MARCH 27, 1996.

7. Exchange witness lists (which should include parties if they intend to testify) with opposition no later than MARCH 27, 1996.

8. File with the Clerk's office no later than MARCH 29, 1996 the original witness list, exhibit index, and any motions or matters with respect to the trial ...

9. If the exhibit list and the witness list are not timely filed and exchanged with opposing counsel, the court assumes that no witness will be called or documents introduced and none will be allowed.

**FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN THE COURT STRIKING PLEADINGS, ENTERING DEFAULT, DISMISSING A CAUSE OF ACTION, AND/OR OTHER ACTION, SUA SPONTE.**

On the date of the trial, the debtor had not complied with paragraphs 6, 7, and 8 of the Pretrial Order, and did not offer any justification for said failure. As sanctions, the Court did not allow the debtor to offer any exhibits into evidence nor to introduce any witnesses that should have been previously identified under the terms of the Pretrial Order.

Federal Rule of Civil Procedure 16(c), applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7016, provides in part that a Pretrial Order shall be entered at the conclusion of any Pretrial Conference at which the court takes action regarding "the identification of witnesses and documents ..." Upon a debtor's failure to comply with such Pretrial Order, the court "upon motion or the judge's own initiative, may make such orders with regard thereto as are just, including orders provided for by Rule 37(b)(2)(B), (C), (D)." FED.R.CIV.P. 16(f). Federal Rule of Civil Procedure 37(b)(2)(B)

provides that a court can enter an order prohibiting a party from introducing designated matters into evidence where the party fails to obey an order of court.

At each Pretrial Conference, the Court typically instructs the parties that a Pretrial Order will be entered, and that strict compliance with the Pretrial Order is expected. If, however, a party discovers that he or she will be unable to comply with the order, the Court instructs the parties to promptly notify the Court of any conflicts to ensure judicial efficiency. The debtor never notified the Court of any conflict regarding the dates set forth in the Pretrial Order. Accordingly, the Court prohibited the debtor from offering documents into evidence, and from calling any witnesses pursuant to the terms of the Pretrial Order.

■ The Court further precluded debtor from testifying in accordance with paragraph seven (7) of the Pretrial Order. The debtor was, however, permitted to cross-examine witnesses called by Huntington. Rather than call the debtor as a witness, Huntington chose to enter the debtor's deposition, taken on March 19, 1996, into evidence pursuant to Federal Rule of Civil Procedure 32(a)(2), which provides as follows:

(a) Use of Depositions. At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions;

(2) The deposition of a party ... may be used by an adverse party for any purpose ...

This rule permits one party to use the deposition of another party "as part of the adversary's proof, regardless of that party's availability to testify at trial." *Mark IV Properties, Inc. v. Club Dev. & Management Corp. (In re Club Dev. & Management Corp.),* 12 B.R. 854, 858 (Bankr.S.D.Cal.1981) (citing *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir.1978)). Accordingly,

the foregoing Findings of Fact were substantially based upon the debtor's testimony during her deposition.

## B. Exceptions to Discharge: 11 U.S.C. § 523(a)(2)(A), (6)

 Huntington first asserts that the debt of approximately $58,673.60 for rent and common area maintenance payments owed by the debtor under the terms of her accelerated lease is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (6). Section 523(a)(2)(A) of the Bankruptcy Code prohibits the discharge of an individual debtor from any debt—

> (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Section 523(a)(6) further prohibits the discharge of an individual debtor from any debt resulting from the "willful and malicious injury by the debtor to another entity or to the property of another entity." Based upon the evidence presented and for the reasons stated below, the Court finds that the subject debt is not due to be excepted from discharge under sections 523(a)(2)(A), (6).

 Subject to certain exceptions expressly enumerated in the Code, the purpose of bankruptcy is to provide honest but financially distressed debtors with a fresh start. *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 680 (11th Cir.1993). It is well established that exceptions to discharge are to be construed narrowly against creditors, and must not be allowed to swallow the general rule favoring discharge. *Mercantile Bank v. Williamson (In re Williamson),* 181 B.R. 403 (Bankr.W.D.Mo.1995). Accordingly, Huntington has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A lack of proof as to any one of the elements set forth below will be fatal to Huntington's claims of fraud and willful and malicious conversion. *In re Hunter,* 780 F.2d 1577 (11th Cir.1986).

 To prevail on a question of dischargeability under section 523(a)(2)(A), Huntington must prove that:

(1) the debtor made a representation;

(2) the debtor knew the representation to be false when made;

(3) the debtor made the false representation with the purpose and intention of deceiving Huntington;

(4) Huntington sustained a loss as a result of the representation; and

(5) Huntington's reliance upon the debtor's false representation was justifiable.

*In re Hunter,* 780 F.2d at 1579; *Field v. Mans,* ── U.S. ──, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277 (11th Cir.1995). Further, to prevail on a question of dischargeability under section 523(a)(6), Huntington must prove that the sale of debtor's inventory constituted a willful and malicious act.

According to Huntington, the debtor masked the store windows with black plastic to prevent Huntington from discovering the debtor's abandonment of the premises, and thereby caused Huntington to fail to protect its interest in debtor's property. The Court, however, finds that debtor's actions do not warrant a finding that the subject debt to Huntington is nondischargeable on the basis of fraud pursuant to section 523(a)(2)(A), nor upon the basis of willful and malicious injury under section 523(a)(6).

First, the Court finds that the debtor's sale of assets after making the decision to close the store did not constitute an intentional, reckless or fraudulent act by the debtor under section 523(a)(2)(A). *See In re Booth,* 174 B.R. 619 (Bankr.N.D.Ala.1994) (reckless indifference to the truth satisfies the element of intent to deceive under section 523(a)(2)(A)). Insufficient evidence was presented to prove that the debtor sold her inventory with the intention of deceiving Huntington or with reckless disregard of Huntington's interest in debtor's inventory. The debtor testified in her deposition that the decision to close the store was not planned. When the debtor closed the store,

she had fallen behind on all of her bills, not just her obligation to Huntington. The debtor, conceivably unaware of Huntington's lien upon her property, merely seized an opportunity to liquidate her video store and pay a substantial portion of her creditors. Accordingly, Huntington failed to satisfy the element of intent under section 523(a)(2)(A).

The Court further finds that Huntington failed to sustain its burden of proof with regard to section 523(a)(6). The term malicious, for purposes of denying the discharge of a debt, means a wrongful act done consciously and knowingly in the absence of just cause or excuse while the term willful means intentional or deliberate. *Burgess v. Martin (In re Martin)*, 171 B.R. 395, 397 (Bankr.N.D.Ala.1994).

"Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's right's." *Thomas Shelton v. Steering Federal Credit Union*, 191 B.R. 893, 895 (Bankr.N.D.Ala.1995) (*citing In re Wolfson*, 56 F.3d 52, 54 (11th Cir.1995)). Thus, conversion of another's property, without his knowledge or consent, done intentionally and without justification or excuse, is a willful and malicious injury within the meaning of section 523(a)(6). 3 COLLIER ON BANKRUPTCY, 523.16 at 523–118–119 (15th ed.). However, the mere act of converting another's property does not by itself constitute willful and malicious injury within the meaning of section 523(a)(6). Instead, the injury resulting from such conversion must be such that the deprivation of the debtor's fresh start is justified under the surrounding circumstances. *In re Wolfson*, 56 F.3d at 53.

It is the Court's opinion that Huntington failed to prove by a preponderance of the evidence that the debtor acted willful and maliciously in selling the video tapes to Amps. It must first be noted that the use of the conjunctive in the phrase "willful and malicious" places a burden upon Huntington to establish both prongs of the test in order for the Court to determine that the debt is nondischargeable pursuant to section 523(a)(6). *Beneficial New York, Inc. v. Bos-sard (In re Bossard)*, 74 B.R. 730, 733 (Bankr.N.D.N.Y.1987).

There is no dispute that the act of selling the video tapes was deliberate and intentional. Thus, Huntington satisfied the first prong of section 523(a)(6). However, the Court finds that Huntington failed to satisfy the second prong. As stated above, the term malicious means a wrongful act done consciously and knowingly in the absence of just cause. In the case of *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988), the Eleventh Circuit adopted the approach taken by the court in the *United Bank of Southgate v. Nelson*, 35 B.R. 766 (Bankr.N.D.Ill.1983) in which the court held that "malice for purposes of section 523(a)(6) can be established by a finding of implied or constructive malice." *Western Temporary Servs., Inc. v. Day (In re Day)*, 1993 WL 734838 (Bankr.S.D.Ga.1993); *See also Rentrak Corp. v. Forbes (In re Forbes)*, 186 B.R. 764 (Bankr.S.D.Fla.1995). However, implied malice is not necessarily established by demonstrating that the debtor acted willfully. Instead, implied malice can be proven "by considering the acts and conduct of the debtor in the context of their surrounding circumstances." *Ford Motor Credit Co. v. Rose*, 183 B.R. 742, 745 (Bankr.W.D.Va.1995).

In considering the facts in a light most favorable to the debtor, the Court finds that the debtor sold the inventory with the belief that she did not have any other alternatives, and that her actions were appropriate under the circumstances. No evidence was presented to establish that the debtor "knew or should have known that h[er] acts would cause financial harm" to Huntington. *In re Thomas*, 116 B.R. 287, 290 (Bankr.M.D.Fla. 1990). Accordingly, the Court finds that Huntington failed to satisfy its burden of proof under section 523(a)(6). The debtor did not realize that Huntington had a lien on the property, and was merely selling her own property.

## C. 11 U.S.C. § 727(a)(2), (3), (4)(A), (5): Denial of Discharge

In its complaint objecting to the discharge of the debtor, Huntington asserts that debtor knowingly and fraudulently made nu-

merous false oaths or accounts in or in connection with the case within the meaning of 11 U.S.C. 727(a)(4)(A), and that the debtor failed to satisfactorily explain the loss of the $30,000.00 in proceeds from the sale of the debtor's inventory that occurred immediately prior to the filing date of debtor's petition pursuant to 11 U.S.C. § 727(a)(5). Huntington further asserts that within one year before the filing of debtor's petition, the debtor transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor within the meaning of 11 U.S.C. § 727(a)(2)(A), and that debtor failed to provide any documentation evidencing the liquidation of debtor's inventory and the distribution of the liquidation proceeds under 11 U.S.C. § 727(a)(3).

■ In order to prevail on an objection to discharge for false oath or account pursuant to section 727(a)(4)(A), Huntington must establish that:

1. debtor made a false statement under oath;

2. debtor made said statement knowingly and with fraudulent intent; and

3. that the statement was material to the bankruptcy case.

*First American Bank v. Bodenstein (In re Bodenstein),* 168 B.R. 23 (Bankr.E.D.N.Y. 1994); *Armento v. Armento (In re Armento),* 127 B.R. 486 (Bankr.S.D.Fla.1991); *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991).

■ For purposes of section 727(a)(4)(A), "false oaths" include false statements or omissions in a debtor's schedules, false statements made by a debtor during the section 341 meeting of creditors, and false statements at the debtor's deposition. *Ohio Co. v. Maynard (In re Maynard),* 162 B.R. 349 (Bankr.M.D.Fla.1991) (holding that debtor's omission from schedules of a pre-petition transfer constituted a false oath); *Montey Corp. v. Maletta (In re Maletta),* 159 B.R. 108 (Bankr.D.Conn.1993) (providing that for purposes of a section 727(a)(4)(A) false statements made by the debtor on his schedules constituted false oaths); *Villas on the Green, Inc. v. Trauger (In re Trauger),* 101 B.R.

378 (Bankr.S.D.Fla.1989). The debtor made numerous false oaths in or in connection with this case. The debtor failed to disclose in her schedules the sale of substantially all of her inventory resulting in the payment of $30,000.00 to the debtor as the sole proprietor of Berry's Video # 2, and the transfer of two computers to her mother. The debtor further failed to disclose her business checking account with AmSouth, despite the admission during her deposition that the account remains open. According to the debtor's testimony at the deposition she believed that it was unnecessary to disclose the business checking account because she filed bankruptcy as an individual. Yet, the only debt sought to be discharged by the debtor is the subject debt to Huntington arising out of debtor's business venture.

The debtor also failed to disclose a loan made to her sister, Donna Parsons, in the amount of $1,500.00. The debtor further failed to disclose the repayment of a $1,000.00 loan to Kendell Berry. It is unclear whether the loan was repaid pre-petition or post-petition. If the loan was repaid pre-petition, the transfer should have been disclosed in the debtor's Statement of Financial Affairs. If, however, the loan was repaid post-petition, the debtor should have disclosed the cash used to repay the loan. It is apparent that the debtor inaccurately listed the amount of cash either on hand or in her checking and savings accounts. Debtor admitted that she used a portion of the $30,-000.00 to pay post-petition expenses such as rent and utilities. Debtor also testified in her deposition that she purchased an automobile for her husband post-petition with $3,750.00 in cash. Yet, debtor's schedules indicate that debtor had a mere $775.00 in cash on the date of her petition. Therefore, the first element of section 727(a)(4)(A) is satisfied.

■ The next element in question with respect to subsections 727(4)(A), is whether debtor conducted the above transactions with intent to defraud her creditors. Actual intent to hinder, delay or defraud is necessary to sustain an objection to discharge, however, actual intent may be proven by circumstantial evidence. *Barthlow v.*

*More (In re More)*, 138 B.R. 102, 104 (Bankr. M.D.Fla.1992). For purposes of denial of discharge, reckless disregard for truth is generally recognized as the equivalent of fraud. *In re Sausser*, 159 B.R. at 355. *Britton Motor Serv. Inc. v. Krich (In re Krich)*, 97 B.R. 919 (Bankr.N.D.Ill.1988) (providing that debtor's reckless indifference for truth was sufficient to justify denial of debtor's discharge based upon debtor's transfer and concealment of property).

■ Where a debtor makes numerous omissions from her bankruptcy schedules and Statement of Financial Affairs, said conduct may constitute a pattern of reckless disregard for the truth, warranting the denial of discharge. *Messing v. Urban (In re Urban)*, 130 B.R. 340, 344 (Bankr.M.D.Fla. 1991). Upon the evidence presented, it is the opinion of this Court that debtor intentionally made false oaths in connection with this case pursuant to section 727(a)(4)(A). The debtor made numerous omissions from her bankruptcy schedules regarding loans to family members, and the amount of cash at the debtor's disposal on the date of her bankruptcy petition. The debtor also failed to list a substantial transaction that resulted in the liquidation of her sole proprietorship converting the inventory to cash just two months before filing her bankruptcy petition, and failed to list the transfer of two computers to her mother. Although the debtor testified regarding these matters in her deposition, the debtor's answers were vague and unresponsive. When asked to specify the amount of money remaining out of the $30,000.00 on the date of debtor's petition, the debtor merely provided that any amount remaining was at home. The debtor's actions, at the very least, constitute a reckless disregard for the truth, which satisfies the element of intent under section 727(a)(4)(A).

■ When determining whether a false oath will bar a debtor's discharge, the test for materiality is whether the false statement was related to the debtor's business transactions or estate, or concerned the discovery of assets, business dealings, or existence and disposition of debtor's property. *Chalik v. Moorefield*, 748 F.2d 616 (11th Cir.1984); *Messing v. Urban (In re Urban)*, 130 B.R. 340 (Bankr.M.D.Fla.1991). Debtors must make full disclosure of all of their assets and liabilities. *Island Bank v. Gill (In re Gill)*, 159 B.R. 348 (Bankr.M.D.Fla.1993). In the instant case, each of the above false oaths unquestionably related to the debtors business and bankruptcy estate, and certainly hindered the ability of Huntington to uncover the extent of the debtor's assets. Therefore, the final element of section 727(a)(4)(A) is satisfied. Accordingly, the debtor's discharge is due to be denied under section 727(a)(4)(A).

■ The Court further finds that the debtor's discharge is due to be denied pursuant to section 727(a)(5). Section 727(a)(5) mandates that "it is the Plaintiff's burden to establish that the Debtor had [an] interest in a property of some substance not too far removed from the date of the commencement of the case and on the date of the commencement of the case, he no longer had that property and when the Debtor was called upon to explain the non-existence of the property, he was unable to furnish a satisfactory explanation." *Insurance Co. of North America v. White (In re White)*, 177 B.R. 110, 115 (Bankr.M.D.Fla.1994). Thereafter, the debtor must explain the loss of said assets. *Manhattan Leasing Sys., Inc. v. Goblick (In re Goblick)*, 93 B.R. 771, 774 (Bankr.M.D.Fla.1988).

In the instant case, the evidence is uncontroverted that approximately three months before the filing date of her petition, the debtor received a cashier's check in the amount of $30,000.00 from an entity known as Amps for the sale of all inventory of Berry's Video # 2, and that the debtor no longer has said asset. During her deposition, the debtor provided a list to Huntington in which the debtor accounted for approximately $19,000.00 of the proceeds. The debtor, however, provided no documentation to support the amounts contained in the list, and failed to account for the dissipation of the remaining $11,000.00.

■ Based upon the foregoing record, the Court believes that the debtor has not offered a satisfactory explanation regarding the subject loss of assets. "Vague and indef-

inite explanations of losses such as 'monies were spent'" are unacceptable without documentation. *Id.; Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246 (11th Cir. 1995). Likewise, an undocumented claim that the money was used to satisfy the debtor's living expenses is unacceptable. *MacPherson v. Shaheen (In re Shaheen)*, 129 B.R. 259, 261 (Bankr.M.D.Fla.1991). Accordingly, the Court finds that the debtor's failure to explain the dissipation of approximately $30,000.00 prior to the filing of her petition warrants the denial of debtor's discharge pursuant to section 727(a)(5).

It is unnecessary for the Court to determine whether the debtor's discharge is due to be denied pursuant to sections 727(a)(2)(A), (3), where debtor's discharge is denied upon the foregoing grounds.