**In re James Henry O'BRYAN, Jr., Debtor.**

**J. Baxter Schilling, Trustee, Plaintiff,**

v.

**James Henry O'Bryan, Jr., Defendant.**

**Bankruptcy No. 98–30660.
Adversary No. 98–3207.**

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 29, 1999.

Thomas Denbow, Louisville, KY, for debtor.

Baxter Schilling, Louisville, KY, trustee.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

The Debtor, James Henry O'Bryan, Jr. ("Debtor"), filed a Chapter 7 bankruptcy proceeding on February 11, 1997. Thereafter, the Trustee filed the above-captioned adversary proceeding, seeking to have Debtor's Chapter 7 Discharge denied under 11 U.S.C. § 727(a)(1), (3), (4) and (5). The matter came on for trial on January 5, 1999. Having failed to file any pretrial compliance including a witness list, exhibit list and pre-trial brief in accordance with the directives of the Court's Pretrial Order entered October 13, 1998, the Defendant/Debtor was precluded from putting on any proof at trial. Instead, the Court limited Debtor's counsel to cross-examining any witnesses called by the Trustee. The Trustee exercised his discretion by declining to call any witnesses and, instead, tendered to the Court 13 properly authenticated exhibits. Thereafter, the Trustee rested his case.

The Court has spent many hours meticulously examining each and every page of

the 13 tendered exhibits. In addition, the Court has thoroughly examined both the entire adversary proceeding file, as well as the main file for Debtor's Chapter 7 case. Based on this thorough and complete review of the documents and evidence before it, the Court finds simply no explanation for transfers to Debtor's wife totaling $28,174.00 during the eight month period preceding bankruptcy, for ATM withdrawals by Debtor from his bank account totaling $3,735.00 during the eight months preceding bankruptcy, or for dissipation of $500,000.00 of assets exclusive of his family residence and estimated liquid net worth of $100,000.00 which he reported he had in a July 29, 1994 document relating to his Prudential Securities Account Number OTY–875679–02. Debtor may very likely have a reasonable explanation for the loss and/or transfers of these assets. Such explanation has not, however, been presented to this Court. Nor can an explanation be gleaned from the case files or documents before this Court. Accordingly, for the reasons set forth below, the Court will sustain the Trustee's § 727(a)(5) claim and the Debtor's Chapter 7 discharge will be denied.

### FINDINGS OF FACT

In an effort to thoroughly understand the Debtor's financial situation, the Court has studied the Debtor's Chapter 7 Bankruptcy Petition, Schedules, State of Financial Affairs, tax returns Debtor turned-over to the Trustee (for years 1994, 1995 and 1996), and certain other financial data and documents tendered by the Trustee. The Court finds from these documents that the Debtor experienced a substantial drop in income from the mid–1990's through February of 1997, when Debtor filed for bankruptcy. Debtor is in the business of selling various types of insurance and acts as a financial consultant. In a July 29, 1994 document relating to Prudential Securities Account Number OTY–875679–02 (Trustee's Exhibit 10), signed by Debtor, Debtor represented that his annual income was approximately $150,000.00. The next year, however, Debtor reported in his Federal tax returns business income of $354.00. In his Statement of Financial Affairs, Debtor reports a business income of $6,518.00 for 1996, $36,913.00 for 1997, and $1500.00 for the period of 1998 preceding his bankruptcy on February 11 of that year. Under Question 2 of the Statement of Financial Affairs, Debtor lists no other income from any additional sources. The Debtor lists a current monthly income of $4,500.00 in Schedule I of his Bankruptcy Schedules, and current monthly expenses of $4,300.00 in Schedule J.

With regard to Debtor's assets, Debtor listed assets totaling $4,420.00 in Schedule B. The Court notes that Debtor gives a total of $3,420.00 in Schedule B, which is repeated by Trustee in his trial brief. However, upon performing the mathematical calculations, itself, the Court finds a $1,000.00 error. The Debtor's total assets are comprised of the following:

(a) computer, printers and furniture ($1,950.00);

(b) supplies ($100.00);

(c) $920.00 in Debtor's checking account at National City Bank;

(d) clothes, suits and pants ($1,000.00);

(e) ⅛ carat man's diamond ring (valued at $200.00, with a notation that it had been appraised at $300.00–$400.00 in the late 1970's); and

(f) a whole life policy through Metropolitan Life Insurance Company ($250.00).

The Court additionally notes that Debtor has listed the current market value of Debtor's retirement fund as "0", even though he will be able to draw $500.00 a month starting at age 65.

In his Statement of Financial Affairs, Debtor lists no payments to creditors (Questions 3 and 4), no losses of assets due to fire, theft, other casualty or gambling within the year preceding bankruptcy (Question 8), and no transfers of property

(Question 10). Thus, no explanation for transfers or dissipation of property is revealed in the Petition, Schedules, or Statement of Financial Affairs. Such transfers and asset losses are not even identified in these documents.

The Trustee's § 727(a) claims arise from sources outside these documents and concern three financial matters. A review of Debtor's bank account records gives rise to the first two concerns. First, they reveal Debtor transferred $28,174.00 to his wife during the period of June 21, 1997 through February 11, 1998. The Court notes that while these transfers generally occurred once a week during this period, the amounts of the transfers increased dramatically from transfers in the $200.00 range in June and early July, to transfers of typically $700.00 to $900.00 in August. By September through the time Debtor filed for bankruptcy, each transfer was at least $1,000.00. Not only did Debtor fail to list these transfers anywhere in his Statement of Financial Affairs or his Bankruptcy Schedules, the Court finds no explanation for these transfers anywhere in the file or in the documents tendered by the Trustee.

Second, the Bank Statements additionally reveal ATM withdrawals by the Debtor during the same time period totaling $3,735.00. These transfers raise particularly troublesome questions due to both their frequency and the significant increase in the amounts withdrawn as the bankruptcy drew closer. The Court notes that the withdrawals took place every day or two, often two withdrawals occurring on the same day. During June through August of 1997, except for two $50.00 withdrawals in late July, the withdrawals were all $20.00 or $30.00. During September, Debtor began to make occasional $40.00 withdrawals, ending the month with a $100.00 withdrawal and a $50.00 withdrawal. Through October, there were numerous $50.00 withdrawals, often paired with other withdrawals on the very same day, and additional $100.00 withdrawals. By November through February 11, 1998, when Debtor filed for bankruptcy, all but four withdrawals ranged from $50.00 to $100.00, and often involved two withdrawals within that amount range on the same day. The Court notes the withdrawals reached a high of $250.00 during the month of December, *presumably* due to the holidays. Again, the Court has scoured the documents before it and finds no explanation for these transfers, for what the money was used or where it went.

The third and final matter of concern arises from a document Debtor signed on July 29, 1994, relating to his Prudential Securities Account Number OTY–875679–02. Debtor represented in that document that he had a net worth of $500,000.00 exclusive of his marital residence and $100,000.00 in liquid assets. The Court simply does not find these assets accounted for in Debtor's Bankruptcy Schedules or Statement of Financial Affairs. As stated above, Debtor's Schedule B lists assets totaling only $4,420.00. His Statement of Financial Affairs does not reflect any transfers of property (Question 10) or payments to creditors (question 3 and 4). Nor does Debtor report any losses of property from fire, theft, other casualty or gambling within the year preceding bankruptcy.

The Court has additionally reviewed all of the financial data tendered as exhibits by the Trustee, including Debtor's tax returns for the years 1994 through 1996. These were apparently all of the tax returns turned-over by the Debtor to the Trustee. The Court has carefully scrutinized these returns, with emphasis on the Long-term and Short-term Capital Gains and Losses Schedules. The Court does not find a transfer of the above-described assets reflected anywhere.

The Court notes that Debtor's income steadily declined from the mid–1990's through the time he filed for bankruptcy. Nevertheless, there is no evidence that Debtor turned to the $500,000.00 in assets

exclusive of his family residence and estimated liquid assets of $100,000.00 to help pay his expenses. Even if Debtor had used the $100,000.00 of liquid assets in this manner, there is no evidence of the $500,000.00 in non-liquid assets having been transferred or liquidated.

Thus, the Court is left without an explanation as to the dissipation of these assets.

### CONCLUSIONS OF LAW

### I. DEBTOR'S FAILURE TO COMPLY WITH THE COURT'S ORDER FOR TRIAL.

At the outset, the Court will address its ruling to preclude Debtor from putting on any proof at trial as a sanction for his counsel's failure to comply with the Pre-trial Order. The Court entered its standard "Order for Trial" on October 13, 1998. The Order clearly states in Paragraph C that "15 days before trial the parties *shall* serve upon all parties and the Court: (1) A List of Witnesses to be called at trial, and (2) List of Exhibits that complies with the requirements of Local Rule No. 11" (emphasis added). The Order additionally states in Paragraph D that "at least ten (10) days before the trial the parties *shall* file with the Court and provide a copy to all other parties a Trial Brief which sets forth (a) the issues in question, (b) a brief summary of what the evidence will tend to prove, and (c) any case authorities or statutes in support of the party's respective position" (emphasis added). Finally, Paragraph E states that "at least five (5) days before trial the parties *shall* file with the Court and provide a copy to opposing counsel the original and two copies of each exhibit it intends to tender at trial" (emphasis added). The Order for Trial additionally sets forth the following sanction for failure to comply with these directives:

IT IS FINALLY ORDERED that a party who without substantial justification fails to disclose information as re-quired *shall* not be permitted to use such evidence, witness(es) or information at trial unless such failure to disclose is harmless. Failure to comply with this Order may result in dismissal of the case and/or other appropriate sanctions.

(Order for Trial entered October 13, 1998, p. 2).

The Order states that a copy thereof was mailed to J. Baxter Schilling, the Trustee,[1] and to Thomas Denbow, Counsel for Defendant. There is additionally a Certificate of Mailing initialed and signed by one of the deputy clerks of this Court, certifying that the Order was mailed to all parties in interest.

Despite the clear mandates set forth in the Order for Trial, counsel for the Debtor failed to serve either the Court or opposing counsel with any pre-trial compliance. Debtor did not file or serve a Witness List, an Exhibits List or a Trial Brief. Counsel for the Debtor, Thomas Denbow, and another member of his law firm, Michelle O'Bryan, who both appeared at trial, attempted to explain their noncompliance by stating that they did not receive a copy of the Order for Trial. The Court rejects this explanation. Counsel for the Debtor, under these facts, is presumed to have received a copy of the Order, based on the Mailbox Doctrine set forth as follows.

### A. THE MAILBOX DOCTRINE.

Rule 9006(e) of the Federal Rules of Bankruptcy Procedure provides for service by mailing and the common law has long recognized a presumption that an item properly mailed was received by the addressee. *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The presumption arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail. *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1323 (6th Cir. 1972).

---

**1.** Mr. Schilling was employed as counsel to represent himself in his capacity as Trustee.

■ It is clear from the language of the Order, itself, directing a copy thereof to be sent to Counsel for the Debtor, as well as the Certificate of Mailing signed and dated by the Deputy Clerk of the Bankruptcy Court, that the Order was in fact sent to Debtor's Counsel. The address of Debtor's counsel is contained in the adversary proceeding case file, and counsel confirmed to the Court on the morning of trial that the listed address was in fact correct. The Court checked the file to additionally confirm that the envelope addressed to Debtor's counsel containing the copy of the Order was not still in the file, unsent. Finally, the Clerk's records show that the mailings were not returned. Based on these facts, there is a presumption of receipt.

■ The presumption of receipt of a pleading is, however, rebuttable. *In re Messics,* 159 B.R. 803 (Bankr.N.D.Ohio 1993). In determining whether the presumption can be rebutted, a Court must consider all of the facts and circumstances to determine whether it is more likely that the Order was received or that it was lost in the mail.

The leading case on this issue is *In re Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir. 1985), where the Sixth Circuit found that the presumption was rebutted. In *Yoder,* the creditor which claimed it had not received Notice of Bankruptcy presented evidence that (1) its name did not appear on the mailing matrix; (2) two other similarly situated creditors did not receive the same notice; and (3) that there was no record of whether the creditor's address was on the labels used to mail the notice. *Id.* There is no such evidence in the case at bar.

■ In this case, Counsel for the Debtor has simply denied receipt of the Order, and presented no evidence to support such a denial. To allow a simple denial of receipt, standing alone, to rebut the presumption would be to destroy the presumption entirely. *In re Messics,* 159 B.R. at 806. Accordingly, given the strong

evidence set forth above that a copy of the Order was mailed to the correct address of Debtor's counsel, the presumption of receipt is not rebutted by counsel's mere denial of receipt.

The Court further notes that counsel has practiced before this Court on a fairly routine basis for many years. They know, or at least should know, that it is the undeviating practice of all three divisions of this Court to send out pre-trial orders requiring witness lists, exhibit lists and trial briefs, and setting forth the deadlines for compliance. Both attorneys for the Debtor have received pre-trial orders in the adversary proceedings they have handled before this Court in the past. The Order is in the nature of a "form order," with the language always the same. As discussed above, the Pre-trial Order clearly states that a party who fails to comply "shall not be permitted to use such evidence, witnesses(es) or information at trial . . ."

Additionally, the Trustee did comply with the Pre-trial Order by serving upon Debtor's counsel, as well as the Court, his Witness List, Exhibits List and Trial Brief. Thus, counsel should have been put on notice that pre-trial compliance was due when they received the Trustee's. In fact, the Court notes that the Trustee's Witness and Exhibits Lists begins, "Comes the Trustee, by counsel, *and in compliance with this Court's Trial Order entered October 13, 1998 states as follows:*" (emphasis added).

■ Accordingly, even if counsel had in fact failed to receive the Pre-trial Order, they would not by that fact, alone, be relieved of their duty to comply. At a minimum, a reasonable and competent attorney in such a situation would be expected to make an inquiry into the matter.

## B. SANCTIONS FOR FAILING TO COMPLY WITH THE COURT'S ORDER FOR TRIAL.

■ The Court sanctioned the Debtor for failing to file or serve any pre-trial

compliance, including a witness list, exhibit list and trial brief, by precluding Counsel for the Debtor from putting on any proof at trial. Instead, the Court limited Debtor's Counsel to cross-examining any witnesses called by the Trustee.

■■■ "[T]he Court has the inherent and statutory power to sanction the parties or attorneys for failure to follow orders of the Court." *Roy v. American Professional Marketing, Inc.,* 117 F.R.D. 687, 692 (W.D.Okla.1987). Bankruptcy Rule 7016 adopts Rule 16 of the Federal Rules of Civil Procedure for application in adversary proceedings. Rule 16(f) states in relevant part:

> If a party or party's attorney fails to obey a scheduling or pre-trial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), or (D).

Fed.R.Civ.P. 16(f). Rule 37 provides a judge with a wide range of sanctions to draw upon in the event of a party's noncompliance. They include, among other sanctions, prohibiting the introduction of evidence, dismissing the action, entering a judgment against the disobedient party, and treating the noncompliance as contempt. *In the Matter of Maurice,* 21 F.3d 767 (7th Cir.1994); *In re M & L Business Machine Co., Inc.,* 167 B.R. 219, 222 (Bankr.D.Colo.1994); *In re McDowell,* 163 B.R. 509, 511–12 (Bankr.N.D.Ohio 1994); *See also Roy,* 117 F.R.D. at 692. The Court is granted broad discretion to impose whichever sanction it deems appropriate based on the particular circumstances. *McDowell,* 163 B.R. at 511–12; *Clarksville–Montgomery County School System v. U.S. Gypsum Co.,* 925 F.2d 993, 998 (6th Cir.1991).

The Court has reviewed the case law concerning the issue of one party's failure to comply with the Pre-trial Order, and finds that the courts that have been faced with this issue not only routinely preclude the noncomplying party from introducing proof in the form of witnesses and exhibits at trial, but frequently go one step further, dismissing the noncomplying party's cause of action, altogether. *M & L Bus. Mach. Co.,* 167 B.R. at 222; *Maurice,* 21 F.3d at 772–73; *McDowell,* 163 B.R. at 511–12; *See also Roy,* 117 F.R.D. at 692 (Court imposed monetary sanctions for noncompliance).

■■■ The Pre-trial Order is designed to identify witnesses and exhibits, and to give notice to the opposing counsel of the legal theories that will be advanced. Accordingly, it provides the parties with full opportunity to adequately prepare for the legal issues to be raised at trial and to plan the evidence to be presented, to resolve evidentiary disputes in advance of trial, and to effectively prepare for the examination and cross-examination of witnesses. Thus, it facilitates the narrowing of issues and evidence, and expedites the trial. *See Maurice,* 21 F.3d at 773. Thus, "when one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing Order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction." *Id.*

The Court notes again at this juncture that the sanction imposed in this case should have come as no surprise to counsel for the Debtor. They have practiced for many years before this Court and have received the Court's standard Pre-trial Order in many other previous cases. The sanction for noncompliance is clearly set forth. In addition, all three divisions of this Court have uniformly and consistently denied noncomplying parties the opportunity to present evidence at trial. In such cases, this Court has always limited counsel to cross-examining witnesses presented by the opposing party.

The failure of Debtor's counsel to comply with the Pre-trial Order has created much work for the Court. It would have been much simpler for the Court to have

had the evidence presented and explained at trial. It has instead had to spend numerous hours studying and deciphering the documents before it. Thus, the Debtor's counsel's noncompliance has created quite a burden for the Court.

■ Nevertheless, it is a sanction that must be imposed. Sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *McDowell*, 163 B.R. at 512; *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). If the Court's Pre-trial Orders were not enforced with sanctions, they might routinely be ignored and, consequently, trials would become riddled with unfair surprises that would impede and hamper the judicial process.

## II. *DEBTOR'S CHAPTER 7 DISCHARGE WILL BE DENIED UNDER § 727(A)(5) FOR FAILURE TO EXPLAIN LOSS OF ASSETS.*

■ The Court begins its analysis of whether Debtor should be denied his bankruptcy discharge with a review of § 727(a)(5). That section of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).

■ A party objecting to a debtor's discharge under this section, for allegedly failing to satisfactorily explain a loss of assets, bears the initial burden of proof. *In re Yokley*, 61 B.R. 198, 200 (Bankr. W.D.Ky.1986); *In re Potter*, 88 B.R. 843 (Bankr.N.D.Ill.1988). The objecting party must demonstrate: (1) debtor at one time,

not too remote from the bankruptcy, owned identifiable assets; (2) on the date debtor commenced his or her bankruptcy, debtor no longer owned the particular assets; and (3) the Bankruptcy pleadings do not reflect an adequate explanation for the disposition of the assets. *See In the Matter of Dupree*, 197 B.R. 928, 938 (Bankr. N.D.Ala.1996); *In re Mart*, 87 B.R. 206, 211 (Bankr.S.D.Fla.1988); *Potter*, 88 B.R. at 843; *See also Yokley*, 61 B.R. at 200. Once the objecting party has met its initial burden of proof, the burden of proof then shifts to the debtor to provide a satisfactory explanation for the disposition of the asset(s). *Yokley*, 61 B.R. at 200; *Mart*, 87 B.R. at 211; *See also In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984).

In this case, the Trustee has identified three categories of assets that Debtor owned prior to bankruptcy, but that had been "lost" or disposed of prior to his filing for bankruptcy on February 11, 1998. The three categories are: (1) checks written by Debtor to his wife during the period of June 21, 1998 through February 11, 1998, totaling $28,174.00; (2) ATM withdrawals by the Debtor during the same time period, totaling $3,735.00; and (3) $500,000.00 in net worth exclusive of his family residence and $100,000.00 liquid net worth, which Debtor reported he had in a July 29, 1994 document relating to his Prudential Securities Account Number OTY–875679–02.

As discussed at great length in the *Findings of Fact* section of this Opinion, this Court has thoroughly scrutinized the Debtor's Chapter 7 Bankruptcy Petition, Bankruptcy Schedules, Statement of Financial Affairs, tax returns Debtor turned-over to the Trustee (for years 1994, 1995 and 1996), Debtor's entire Chapter 7 main case file, the entire adversary proceeding file, and all exhibits including additional financial data concerning the Debtor tendered by the Trustee. The Court simply can find no explanation for the "loss" of the assets at issue. Instead, the Court discerns an eyebrow-raising pattern of

transfers and ATM withdrawals that increased in amount and frequency as Debtor's bankruptcy filing approached.

 At trial, Debtor's counsel requested this Court to focus on the fact that Debtor experienced a substantial decrease in income in the years immediately preceding bankruptcy, when conducting its review of the documentary evidence. The Court did just that, but still failed to find any accounting for the loss of assets. The Court notes that "vague and indefinite explanations of losses such as 'monies were spent' are unacceptable without documentation." *Dupree,* 197 B.R. at 938–39; *In re Hawley,* 51 F.3d 246 (11th Cir.1995); *See also Yokley,* 61 B.R. at 200 ("meager, uncertain, and contradictory testimony of the debtor does not amount to a satisfactory explanation . . ."). An explanation that money was used to satisfy Debtor's living expenses, without supporting documentation, is likewise unacceptable. *Dupree,* 197 B.R. at 939; *In re MacPherson,* 129 B.R. 259, 261 (Bankr.M.D.Fla.1991).

The case law construing § 727(a)(5) is clear. Unexplained transfers of assets, withdrawals from bank accounts, and/or dissipated assets warrant denial of a debtor's bankruptcy discharge. *See Dupree,* 197 B.R. at 938. Accordingly, Debtor's discharge must be denied in this case.

### CONCLUSION

For the above-stated reasons, the Court by separate Order will enter judgment on behalf of the Trustee and will deny the Debtor his Chapter 7 discharge.