**In re David A. LUFKIN a/k/a David A. Lufkin, Attorney, Debtor.**

**William T. Hendon, Trustee, Plaintiff,**

**v.**

**David A. Lufkin, Defendant.**

**Bankruptcy No. 00–32361.**
**Adversary No. 01–3059.**

United States Bankruptcy Court,
E.D. Tennessee.

July 17, 2008.

Order Denying Reconsideration
Aug. 18, 2008.

Little & Milligan, PLLC, F. Scott Milligan, Knoxville, TN, for Plaintiff/Trustee.

Law Offices of Mayer & Newton, John P. Newton, Jr., Richard M. Mayer, Knoxville, TN, for Defendant/Debtor.

## MEMORANDUM ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RICHARD STAIR, JR., Bankruptcy Judge.

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff, William T. Hendon, Chapter 7 Trustee, on April 27, 2001, as amended on June 29, 2001, objecting to the Defendant's/Debtor's discharge under 11 U.S.C.A. § 727(a)(2)(A), (3), (4)(D), and/or (5) (West 2004). Due to state court criminal proceedings pending against the Defendant, these proceedings were stayed pursuant to an Agreed Order entered on September 5, 2001, and fourteen subsequent orders extending the deadline for the Defendant to file an answer. Finally, on September 6, 2007, the court held a scheduling conference which resulted in the issuance of a Pretrial Order setting a trial date for April 28, 2008, and directing, *inter alia,* that the Defendant file his answer by September 21, 2007, and that dispositive motions be filed by February 7, 2008. Through various orders modifying the Pretrial Order, the trial has been rescheduled for September 29, 2008, the Defendant's answer date was extended through October 1, 2007, and the deadline for filing dispositive motions was extended through March 20, 2008. On November 5, 2007, the Defendant filed the Defendants [sic] Answer to Amended Complaint (Answer), primarily asserting his Fifth Amendment rights.

On March 14, 2008, the Plaintiff filed the Plaintiff's Motion for Partial Summary Judgment (Motion for Partial Summary Judgment), a Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, and the Plaintiff's Statement of Undisputed Material Facts (Statement of Undisputed Material Facts), as required by E.D. Tenn. LBR 7056–1. The following exhibits are incorporated into and made a part of the Statement of Undisputed Material Facts: (1) the Amended Complaint; (2) the Answer; (3) the February 6, 2008 Affidavit of Mary Katherine Trowbridge; (4) a Transcript of Proceedings dated December 7, 1999, in Case No. 27339(L), styled *Assetcare, Inc. v. Lufkin, et al.,* pending in the Chancery Court for Sullivan County, Tennessee; (5) the February 20, 2008 Affidavit of Brent Semple; (6) the March 4, 2008 Affidavit of Suzanne Mechlem; (7) the February 12, 2008 Affidavit of William T. Hendon, Trustee; (8) the Defendant's Statement of Financial Affairs, Summary of Schedules, Schedule B—Personal Property, and Declaration Concerning Debtor's Schedules filed on August 11, 2000; (9) a transcript of the Deposition of David A. Lufkin, Sr., taken on January 11, 2008; and (10) a Stipulation Regarding Testimony of Lori Lufkin dated February 4, 2008, signed by Plaintiff's counsel and counsel for Lori Lufkin.

On May 9, 2008, the Defendant filed the Defendant's Response to Motion for Partial Summary Judgment (Response to Motion for Partial Summary Judgment), incorporating therein the Defendant's Statement of Undisputed Facts, setting forth eight additional material facts he contends are undisputed.[1] He also filed on the same date, the Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Response to Statement of Undisputed Material Facts),[2] incorporating two excerpts from the Deposition of Mary Trowbridge.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(J) (2005).

### I

An Involuntary Petition was filed against the Defendant under Chapter 7 on June 14, 2000, and the court entered the Order for Relief on July 13, 2000.[3] STMT. OF MAT. UNDISP. FACTS ¶ 1. The Plaintiff was appointed Chapter 7 Trustee at that time and continues to serve in that capacity. STMT. OF MAT. UNDISP. FACTS ¶ 1.

Prior to the filing of the Involuntary Petition and the surrender of his law license in December 1999, the Defendant engaged in the practice of law in the State of Tennessee, operating law practices under the names of David A. Lufkin, David A. Lufkin, Attorney, David A. Lufkin, P.C., and Lufkin, Henley & Conner, PLLC. Ex. 1 at ¶ 4; Ex. 2 at ¶ 4. On December 17, 1999, the Chancery Court for Knox County, Tennessee, named Larry Giordano, Esquire, as receiver for the Defendant. DEF.'S STMT. OF UNDISP. FACTS ¶ 2. Thereafter, on January 5, 2000, Robert M. Bailey, Esquire, was appointed as receiver for David A. Lufkin, David A. Lufkin, P.C., and Lufkin, Henley & Conner, PLLC. DEF.'S STMT. OF UNDISP. FACTS ¶ 2.

On August 11, 2000, the Defendant's statements and schedules were filed. COLL. EX. 8. The Defendant did not personally sign the statements and schedules; instead, the Statement of Financial Affairs and Declaration Concerning Debtor's Schedules were signed in the Debtor's name by the Debtor's wife, Lori A. Lufkin, under the authority of a power of attorney. EX. 7 at ¶ 4; COLL. EX. 8. At the initial meeting of creditors held on September 19, 2000, and at the subsequent continuations, the Defendant asserted his Fifth Amendment rights against self-incrimination and did not testify or voluntarily provide to the Plaintiff any personal records regarding his financial information. Ex. 7 at ¶ 5.

The Plaintiff filed the Complaint initiating this adversary proceeding on April 27, 2001, which was superseded by an Amended Complaint filed on June 29, 2001, objecting to the Defendant's discharge on grounds that the Defendant: (1) intentionally and with the intent to defraud creditors transferred, concealed, removed, em-

---

1. Although he referenced seven exhibits in the Defendant's Statement of Undisputed Facts, the Defendant failed to attach these exhibits. Nevertheless, pursuant to E.D. Tenn. LBR 7056–1(c), which authorizes the filing by the Defendant of "a statement of additional material facts that the respondent contends are undisputed and require the denial of the motion[,]" because the Plaintiff did not respond to the stated facts within five days, they are deemed admitted.

2. On May 27, 2008, the Plaintiff's Reply to Defendant's Response to Motion for Partial Summary Judgment was filed by the Plaintiff; however, this Reply is not authorized by the Local Rules and was therefore not considered.

3. The Defendant's bankruptcy case and this adversary proceeding are governed by the Bankruptcy Code as enacted prior to the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

bezzled, and/or dissipated client funds in his possession; (2) falsified and concealed information concerning his client accounts; (3) misappropriated and converted client funds in his possession; (4) improperly used business monies to pay personal expenses; (5) fraudulently transferred funds with the intent to hinder, delay, or defraud his creditors; and (6) failed to provide the Plaintiff with any personal or business records concerning real property, transfers of property, assets, tax information, and/or financial information.

The Defendant filed his Answer on November 7, 2007, admitting only the jurisdictional statement, his address for the purposes of service of process, that he was in bankruptcy due to the Involuntary Petition, that the Plaintiff was appointed as Trustee in his case, that he supplied information to the Plaintiff concerning life and/or disability insurance policies that are exempt under the Bankruptcy Code, and that he had engaged in the practice of law prior to giving up his law license in December 1999. He expressly denied that the Plaintiff had stated a cause of action against which relief could be granted pursuant to § 727(a)(2)(A), (3), (4)(D), and/or (5). With respect to the remaining allegations in the Amended Complaint, the Defendant asserted his Fifth Amendment rights.

In his Motion for Partial Summary Judgment filed on March 14, 2008, the Plaintiff asks the court to find that the Defendant should be denied his discharge under § 727(a)(3) and/or (5) and requests a summary judgment on those grounds. The Defendant, in his Response to Motion for Partial Summary Judgment filed on May 9, 2008, argues that there are genuine issues of material fact and that partial summary judgment is not appropriate.

## II

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable in adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir.2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S.Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of sum-

mary judgment." *Anderson,* 106 S.Ct. at 2510.

Having reviewed the Motion for Partial Summary Judgment, all documents filed in connection therewith, and the record as a whole, the court finds that genuine issues of material fact exist with respect to § 727(a)(3) and that the Plaintiff's Motion for Partial Summary Judgment on this ground must be denied. The Plaintiff is, however, entitled to summary judgment sustaining his objection to discharge grounded on § 727(a)(5).

## III

▮ Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C.A. § 727, unless one or more of the ten statutory exceptions are found to exist.[4] As material to the Plaintiff's Motion for Partial Summary Judgment, § 727 provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [or]

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C.A. § 727(a). These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker),* 74 B.R. 233, 236 (Bankr.E.D.Tenn.1987) (quoting *Harman v. Brown (In re Brown),* 56 B.R. 63, 66 (Bankr.D.N.H.1985)). Section 727(a) is liberally construed in favor of the debtor, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir.2000); *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams),* 31 F.3d 389, 393 (6th Cir. 1994); FED. R. BANKR.P. 4005.

## A

The Plaintiff first contends that the Defendant should be denied his discharge under § 727(a)(3) for failing to produce documentation "with enough information to ascertain [his] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich. Nat'l Bank (In re Wazeter),* 209 B.R. 222, 227 (W.D.Mich.1997) (quoting *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996) (citations omitted)). This disclosure provides the trustee and creditors with sufficient information concerning the Defendant's financial history and current financial affairs, because "[c]reditors are not required to risk having the debtor withhold or conceal assets 'under the cover of a chaotic or incomplete set of books or records.'" *Me-*

---

**4.** Chapter 7 discharge relieves "honest but unfortunate" debtors of their debts and allows them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr.E.D.Tenn.2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir.1989)) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). "Except as provided in section 523 . . ., a discharge under subsection (a) . . . discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" 11 U.S.C.A. § 727(b) (West 2004).

*ridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992) (quoting *Cox v. Lansdowne (In re Cox),* 904 F.2d 1399, 1401 (9th Cir. 1990)).

■■■ Although the Plaintiff is not required to investigate and acquire the Defendant's records, since it is the Defendant's responsibility to provide sufficient information, *see Wazeter,* 209 B.R. at 227–28, the Plaintiff does bear the initial burden of proof under § 727(a)(3) that the Defendant "has failed to maintain adequate books and records and that such failure renders it impossible to discern [his] true financial condition[.]" *Christy v. Kowalski (In re Kowalski),* 316 B.R. 596, 601 (Bankr.E.D.N.Y.2004). If the Plaintiff proves that the Defendant's records are inadequate, the burden shifts to the Defendant to prove that his failure to maintain records was justified under the specific circumstances of his case. *Turoczy Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 883 (6th Cir. BAP 1999). Intent is not an element under § 727(a)(3). *Union Planters Bank, N.A. v. Connors,* 283 F.3d 896, 901 (7th Cir.2002).

■■■ The adequacy of a debtor's records is determined on a case by case basis, *Strbac,* 235 B.R. at 882, and judges have broad discretion to deny discharge based on inadequately kept books and records. *Dolin v. N. Petrochemical Co. (In re Dolin),* 799 F.2d 251, 253 (6th Cir.1986).

> The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must " 'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence

made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.' "

*Alten,* 958 F.2d at 1230 (quoting *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979) (citations omitted)). Instead, the Defendant's records should be measured "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *Wazeter,* 209 B.R. at 227 (quoting *Wynn v. Wynn (In re Wynn),* 205 B.R. 97, 101 (Bankr.N.D.Ohio 1997)). Factors focused on by the courts include:

> (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

*Kowalski,* 316 B.R. at 602 (citing *Krohn v. Frommann (In re Frommann),* 153 B.R. 113, 117 (Bankr.E.D.N.Y.1993)).

The Plaintiff states in his Affidavit that his only access to the Defendant's financial records came in the form of client ledger cards obtained from Mr. Bailey, the court-appointed receiver for the Defendant's law practice entities, and that he is left with inadequate records concerning the Defendant's financial condition.[5] HENDON AFF. at

---

**5.** Mr. Hendon also states that "it was discovered that the ledger cards were not accurate

in many instances and were fabricated."

¶¶ 5–6. In response, the Defendant argues that he was personally placed into receivership in December 1999, followed by his business entities in January 2000, and that all of his financial documents, both personal and business, are in the possession of his court-appointed receivers and available to the Plaintiff through those individuals. DEF.'S. ST. UNDISP. FACTS at ¶¶ 2–3. He also states that he provided the Plaintiff with copies of his 1999 tax returns, as evidenced by Exhibit 6 to the Complaint filed on April 27, 2001. *Id.* at ¶ 7. The Plaintiff has not refuted these statements of undisputed material facts.[6]

■ Subsection (a)(3) requires proof that a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve" financial information "unless such act or failure to act was justified under all of the circumstances of the case[,]" after which the burden of proof shifts to the debtor to prove that his records are, in fact, adequate. Although the Plaintiff has offered proof in the form of Mr. Hendon's Affidavit that the Defendant has not provided him with information suf-ficient to ascertain the Defendant's true financial condition at the time of filing, the Defendant has raised questions of material fact concerning the custody of his financial records and the Plaintiff's ability to obtain those records from the two court-appointed receivers. Additionally, in her Affidavit, Mary Trowbridge, former financial officer for the Defendant's law practice, states that she has reviewed bank statements and checks for November and December 1999 from the Defendant's IOLTA trust account, TROWBRIDGE AFF. at ¶ 11, which she testified at her deposition that she reviewed with the Plaintiff's attorney, DEF.'S RESP. TO ST. OF UNDISP. MAT. FACTS, Ex. A at p. 31, lines 4 through 21, meaning that the Plaintiff has some bank records in his possession for the time periods in question.

■ Taking all facts and inferences in a light most favorable to the Defendant, as the non-moving party, the court finds that there are material issues of genuine fact to be addressed, and the Plaintiff is not entitled to partial summary judgment under § 727(a)(3) as a matter of law.[7]

---

HENDON AFF. at ¶ 6. Because this statement is wholly conclusory, it is of no probative value.

**6.** *See supra* n. 1.

**7.** The Plaintiff accurately points out that the Defendant has not answered questions under oath, consistently asserting his Fifth Amendment rights against self-incrimination. Courts are prohibited from denying a debtor's discharge when he has failed to testify based upon a "properly invoked privilege against self-incrimination[.]" 11 U.S.C.A. § 727(a)(6)(C).

Section 727(a)(6)(C) generally preserves the right of a debtor who properly asserts the privilege against self-incrimination. In other words, that section provides that a court may not deny a discharge *solely* because a debtor has refused to testify because of his Fifth Amendment privilege. Thus, a court may not use denial of a dis-charge as a *sanction* for a debtor's refusal to testify because of the privilege.

However, nothing in § 727(a)(6)(C) prevents a court from denying a discharge when a debtor has failed to provide a trustee with enough information to administer the estate-even when that debtor's failure to provide information is occasioned by his reliance on his Fifth Amendment privilege. The focus of § 727(a)(6)(C) is on a debtor's *refusal to testify,* not on the information available to a trustee. This is [a] subtle but important distinction. Congress clearly did not intend to permit a debtor to gain the benefit of a discharge on the basis of patently inadequate information. If it did, it would, in effect, be approving the use of the privilege as a sword instead of as a shield. Rather, it intended to prevent the situation in which a debtor is punished for the invocation of the privilege.

*In re Moses,* 792 F.Supp. 529, 534–35 (E.D.Mich.1992) (citations omitted).

## B

 The Plaintiff also seeks partial summary judgment granting his objection to the Defendant's discharge under § 727(a)(5), alleging that the Defendant has not adequately explained what happened to money held in his client trust account, which the Plaintiff avers was misappropriated and paid instead to the Defendant and his wife. The court has "broad power [under § 727(a)(5)] to decline to grant a discharge ... where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996). The initial burden is on the Plaintiff to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question. *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr.W.D.Ky.1999). He is not, however, required to prove that the Defendant acted knowingly or fraudulently, as "noticeably lacking from § 727(a)(5) is any

element of wrongful intent or, for that matter, any affirmative defenses— § 727(a)(5) simply imposes strict liability." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr.N.D.Ohio 2004).[8]

 The burden then shifts to the Defendant to provide a satisfactory explanation of the whereabouts of the assets. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984). "[A] satisfactory explanation 'must consist of more than ... vague, indefinite, and uncorroborated' assertions by the debtor," *D'Agnese*, 86 F.3d at 734 (quoting *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir.1966)), and it must be reasonable and credible, such that the court is convinced that the debtor is acting in good faith. *Fed. Deposit Ins. Corp. v. Hendren (In re Hendren)*, 51 B.R. 781, 788 (Bankr.E.D.Tenn.1985). Furthermore, the explanation must be supported by "at least some documentation ... [that is] sufficient to 'eliminate the need for the Court to speculate as to what happened to all the assets.'" *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 364–65 (Bankr. N.D.Ill.2002) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 956 (Bankr.N.D.Ill.1995)); *see also NAFCO*

Nevertheless, "a negative inference can be drawn from a failure to testify in civil proceedings, and [] drawing such an inference violates neither the Fifth Amendment nor Due Process[.]" *Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir.2005) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)). Many courts have "expressed doubt as to whether a court can draw [negative] inferences at the summary judgment stage, where all reasonable inferences must be drawn for the non-movant, *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 445 F.3d 518, 522 (1st Cir. 2006), and it is within the discretion of the trial court whether to apply a negative inference." *DirecTV v. Lovejoy*, 366 F Supp.2d 132, 137 (D.Me.2005). In this case, the court

has not drawn any such inference with respect to this Motion for Partial Summary Judgment since the Defendant has asserted facts not disputed by the Plaintiff that raise material issues.

8. "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to 'relieve[] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D.Ill.2004) (quoting *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 545 (Bankr.N.D.Ill.2002)).

*Fed. Credit Union v. Lawson (In re Lawson)*, 308 B.R. 417, 426 (Bankr.D.Neb. 2004) ("The explanation should be sufficient so the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation.").

▮ The Plaintiff contends that the Defendant has failed to sufficiently explain the dissipation of funds that were deposited into his client trust account but were not paid to the Defendant's clients. In support of the contention that he misappropriated these funds, the Plaintiff first offers the Affidavit of Ms. Trowbridge, who states that as the Defendant's former financial officer, she made deposits and disbursements from the firm's bank accounts and personally maintained the firm's accounting records under the supervision and direction of the Defendant. TROWBRIDGE AFF. at ¶¶ 2–3.

Ms. Trowbridge explained that the firm did not use its computer system for accounting purposes; instead, the primary accounting records were in the form of ledger cards, indicating the forwarder of the file, the client seeking recovery, the amount of the debt, the fee arrangement, payments received, fees deducted, disbursements to clients and the date disbursed, the ongoing balance due, and any additional relevant client information, and she attaches an example ledger card which shows the case, forwarder, amount owed, contingency fee percentage, date of action, payment amount, remittance amount and date, balance, and court costs balance. TROWBRIDGE AFF. at ¶¶ 5–6; Ex. A. With respect to the accounts of General Revenue Corporation, Ms. Trowbridge references the use of different colored ink in the "date remitted" column of the ledger cards, explaining that the entries marked in red ink indicate that the disbursements were actually made to the client on the date indicated, but if the date was written in blue or green ink, remittances were noted but, per the Defendant's instructions, were not actually sent to General Revenue Corporation. TROWBRIDGE AFF. at ¶ 9; COLL. EX. C.

When payments were received on the firm's collection accounts, they were deposited into the Tennessee Bar Foundation IOLTA Account of David A. Lufkin, PC (IOLTA account) and then disbursed from this account either into the general firm account to pay attorneys fees or into another trust account for disbursement. TROWBRIDGE AFF. at ¶ 10. In her Affidavit, Ms. Trowbridge states that she reviewed the bank statements and checks paid from the IOLTA account for November and December 1999, noting that approximately $70,000.00 was made payable as attorneys' fees, but she cannot determine from the records which accounts and/or amounts could be attributed to which clients. TROWBRIDGE AFF. at ¶ 11.

Finally, Ms. Trowbridge states that as part of her responsibilities as the firm's financial officer, she paid accounts and bills at the Defendant's direction from the law firm accounts. TROWBRIDGE AFF. at ¶ 12. During 1999, at the Defendant's direction, Ms. Trowbridge made disbursements from the law firm accounts to the Defendant and his wife, Lori Lufkin, who was employed as the firm's office manager, and routinely paid personal and family bills for the Lufkins from the law firm accounts or from another account in Lori Lufkin's name funded from law firm receipts. TROWBRIDGE AFF. at ¶ 12; DEF.'S RESP. TO ST. OF UNDISP. MAT. FACTS, EX. B at p. 35, lines 5 through 24.

The Plaintiff also offers the Affidavit of Brent Semple, president of C. Garth Semple & Associates, Inc. (Semple & Associates), a former client of the Defendant. Mr. Semple states that Semple & Associ-

ates retained the Defendant to pursue a collection action against Robert Toole; on April 29, 1999, Semple & Associates obtained a $17,162.85 judgment against Mr. Toole; that the judgment was satisfied on November 5, 1999, by delivery of a check to the Defendant drawn on Mr. Toole's account at First American Bank payable to Semple & Associates in the amount of $17,886.98; and that the Defendant negotiated the settlement check without the authorization of Semple & Associates. SEMPLE AFF. at ¶¶ 1-4. Mr. Semple further states that under the terms of the Defendant's fee engagement with Semple & Associates, the Defendant was to receive twenty-five percent (25%), or $4,471.75, of the settlement proceeds and the remaining $13,415.23 was to be paid to Semple & Associates but was not. SEMPLE AFF. ¶ 4. Instead, Semple & Associates recovered those funds from AmSouth Bank, as successor to First American National Bank, for improper negotiation. SEMPLE AFF. at ¶ 5.

Mr. Semple's Affidavit is undisputed, as are the facts reiterated by Ms. Trowbridge in her Affidavit, wherein she references, *inter alia,* the Semple & Associates account and attaches copies of the ledger card, the cashier's check dated November 3, 1999, payable to C. Garth Semple & Associates, and the deposit slip showing that the check was deposited into the Defendant's IOLTA account on November 3, 1999. TROWBRIDGE AFF. at ¶ 7; COLL. Ex. B. Additionally, the ledger card reflects that the contingency fee for the account was $4,471.74 and the remittance amount was $13,415.24, but the card does not indicate a date of remittance. TROWBRIDGE AFF. at ¶ 7; COLL. Ex. B. The card also shows the handwritten initials "DAL" which, Ms. Trowbridge states, means that the file was assigned to the Defendant, and no other person in the office was allowed to work on it. TROWBRIDGE AFF. at ¶ 7.

Additionally, the Plaintiff offers the Affidavit of Suzanne Mechlem, who is employed in the legal department of General Revenue Corporation, a company that forwarded collection accounts to the Defendant in the 1990s. MECHLEM AFF. at ¶¶ 1-2. Ms. Mechlem states that in 1999, General Revenue Corporation was alerted to the possibility that the Defendant was not properly administering his files or disbursing client funds. MECHLEM AFF. at ¶ 3. She further states that after comparing ledger cards from the Defendant's business with her company's records, many disbursements were, in fact, not made at the times recorded on the Defendant's ledger cards or were not remitted at all. MECHLEM AFF. at ¶ 4. This fact was substantiated by Ms. Trowbridge in her Affidavit, in which she explained that there are, with respect to General Revenue Corporation, incorrect remittance dates reflected in blue or green ink on the ledger cards as directed by the Defendant. TROWBRIDGE AFF. at ¶ 7; COLL. Ex. C.

Ms. Mechlem outlines specific examples of the Defendant's misrepresentations of payments remitted and attaches to her Affidavit the relevant ledger card and supporting documentation. MECHLEM AFF. at ¶ 4; COLL. Exs. A-G. As relevant to this determination, in file number 01933 370274 for Jamie Berry, the Defendant's ledger card reflects that the beginning balance in May 1997 was $2,817.39, that thirty-one $100.00 payments were received between May 23, 1997, and December 13, 1999, and that disbursements totaling $3,083.33 were made to General Revenue Corporation between October 7, 1997, and April 3, 2000. MECHLEM AFF. at ¶ 7; COLL. Ex. C. However, Ms. Mechlem states that General Revenue Corporation's records indicate receiving only partial disbursements from the Defendant on this account between July 1998 and November 1999. Mechlem Aff.

at ¶7; COLL. EX. C. Furthermore, in a letter dated November 15, 1999, the Defendant advised Kimberly Eberle with General Revenue Corporation that a judgment in the amount of $2,918.96 was obtained on May 3, 1997, but that Mr. Berry had only paid $900.00, leaving a judgment balance of $2,018.96. MECHLEM AFF. at ¶11; COLL. EX. G.

Similarly, with respect to file number 01942790027 for Ronald Hogsed, Sr., the Defendant's ledger card reflects that, on February 16, 1999, he received a payment in the amount of $11,966.61 and that, after subtracting his contingency fee in the amount of $1,979.72, the Defendant remitted $9,986.89 to General Revenue Corporation on March 16, 1999. MECHLEM AFF. at ¶8; COLL. EX. D. The payment history maintained by General Revenue Corporation as of June 20, 2001, however, establishes that on October 29, 1994, a $50.00 payment was received for the Hogsed file. Ms. Mechlem states that no subsequent payments, including the $9,986.89 indicated on the Defendant's ledger card, were ever received by General Revenue Corporation from the Defendant. MECHLEM AFF. at ¶8; COLL. EX. D. Additionally, in his November 15, 1999 letter to Kimberly Eberle, the Defendant represented to General Revenue Corporation that no payments had been credited against the judgment obtained against Mr. Hogsed on September 19, 1996, and that the entire amount of the judgment, $9,634.99, remained unpaid. Mechlem Aff. at ¶11; COLL. EX. G.

For file number 01930960104 for Charles Pierce, the Defendant's ledger card reflects that between September 27, 1999, and January 14, 2000, the Defendant received fourteen payments totaling $1,115.09, from which he collected his contingency fee in the amount of $60.12 before remitting $1,054.97 to General Revenue Corporation in April 2000. MECHLEM AFF.

at ¶9; COLL. EX. E. Nevertheless, as evidenced by the payment history summary dated June 19, 2002, General Revenue Corporation received only one payment after July 23, 1996, for this account, a payment in the amount of $358.40 received on May 22, 2000. MECHLEM AFF. at ¶9; COLL. EX. E. Additionally, the Defendant represented in his letter to Kimberly Eberle dated November 15, 1999, that he had obtained a judgment against Mr. Pierce in the amount of $6,081.99 on June 16, 1995, and that a balance of only $881.99 remained. MECHLEM AFF. at ¶11; COLL. EX. G.

With respect to file number 01950860218 for Larry McClendon, General Revenue Corporation was not provided with a ledger card, but Ms. Mechlem instead reviewed a computer printout from the Defendant's computer system evidencing that the Defendant received a payment in the amount of $4,769.57 on October 30, 1997, but did not remit this payment to General Revenue Corporation. MECHLEM AFF. at ¶10; COLL. EX. F. She also states that this printout evidences a series of communications between the Defendant's office and General Revenue Corporation after this payment was received by the Defendant, including one over a year after payment was received concerning whether the Defendant could settle the account for a less lump sum amount. MECHLEM AFF. at ¶10; COLL. EX. F. Moreover, the Defendant's November 15, 1999 letter to Kimberly Eberle reflects that there was a balance of $3,994.79 on the judgment obtained against Mr. McClendon on February 12, 1997, in the original amount of $4,894.79. MECHLEM AFF. at ¶11; COLL. EX. C. Thereafter, in December 1999, General Revenue Corporation received three payments totaling $3,898.82 from the Defendant's office. MECHLEM AFF. at ¶10; COLL. EX. F.

Finally, the Plaintiff also relies upon the Defendant's statements and schedules filed on August 11, 2000, in support of his Motion for Partial Summary Judgment. The Defendant's Statement of Financial Affairs indicates that in 1998, the Defendant earned $119,180.02 jointly with his wife, Lori Lufkin, that they earned $48,462.70 in 1999, and that in December 1999, the Defendant received mutual funds with a value of $42,056.61 when he closed an account with New England Funds. STMT. OF FIN. AFFAIRS at ¶¶ 1, 11. However, the Defendant's Schedule B–Personal Property evidences that, as of August 2000, the Defendant held no cash on hand and his checking account with SunTrust Bank held only $200.00 and his checking account with AmSouth held only $1,400.00. SCHEDULE B at ¶¶ 1, 2. The Defendant's Statement of Financial Affairs also evidences that in late 1999 or early 2000, the Defendant transferred mutual funds to Joseph Levitt, Jr., valued at $20,372.00 less an approximate $3,300.00 setoff by First American National Bank. See STMT. OF FIN. AFFAIRS at ¶¶ 10, 11.

The Defendant has not offered any facts or evidence to rebut the undisputed proof established by the Mechlem, Trowbridge, and Semple Affidavits, as well as the statements and schedules filed in his case, that within one year of the commencement of his involuntary bankruptcy, he was in possession of significant funds that he did not account for at the time of his bankruptcy case, nor has he provided any explanation concerning the dissipation of these funds. The undisputed record establishes that $14,415.23 which should have been paid to Semple & Associates was deposited into the Defendant's IOLTA account but was never remitted to the client. It also evidences that a minimum of $13,573.17 which was reflected as collected by the Defendant and should have been remitted to General Revenue Corporation was not, in fact, received by General Revenue Corporation. Additionally, as shown by the statements and schedules filed in the Defendant's bankruptcy case, $21,684.61 from the closing of the Defendant's mutual fund account with New England Funds in December 1999 was, as of August 11, 2000, unaccounted for.

Taking all facts and inferences in a light most favorable to the Defendant, the court finds that the Plaintiff has satisfied his burden of proof under § 727(a)(5), and the burden shifted to the Defendant to provide a satisfactory explanation as to the dissipation of the funds in question, which he has failed to do, entitling the Plaintiff to judgment as a matter of law. The court makes this determination based solely upon the facts and evidence in the record, as explained in detail in this Memorandum, and without the benefit of any negative inference drawn from the Defendant's assertion of his Fifth Amendment rights. *See Marrama*, 445 F.3d at 523 (finding that summary judgment may be granted based upon "any independently sufficient ground" in the record.).

Accordingly, the Plaintiff's Motion for Partial Summary Judgment with respect to his § 727(a)(5) grounds will be sustained, and the Defendant's discharge shall be denied. An order consistent with this Memorandum will be entered.

### *MEMORANDUM AND ORDER ON MOTION TO RECONSIDER*

Before the court is the Motion to Reconsider filed by the Defendant on July 28, 2008, asking the court, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rules 9023 and 9024, respectively, of the Federal Rules of Bankruptcy Procedure, to reconsider the Order entered on July 17, 2008, granting in part

and denying in part the Plaintiff's Motion for Partial Summary Judgment. Pursuant to the July 17, 2008 Order, the court sustained the Plaintiff's objection to the Defendant's discharge under 11 U.S.C.A. § 727(a)(5) (West 2004), but denied the Plaintiff's request for summary judgment under 11 U.S.C.A. § 727(a)(3) (West 2004).[1] In its Memorandum on Plaintiff's Motion for Partial Summary Judgment (Memorandum Opinion) accompanying the July 17, 2008 Order, the court found that the Plaintiff had satisfied his burden of proving that the Defendant had in his client trust account, prior to the filing of his bankruptcy case, client funds which were not paid to clients and were not in the Defendant's accounts at the time his petition was filed, and that the Defendant failed to satisfactorily explain and/or account for the disposition of those funds.

Arguing that his law firm was a separate legal entity, under the supervision of a receiver from December 1999, and its transactions are not relevant to his individual bankruptcy case, the Defendant asks the court to reconsider its decision, find that there are genuine issues of material fact, and allow the adversary proceeding to move forward to trial currently scheduled for September 29 and 30, 2008. In the Plaintiff's Response to Defendant's Motion to Reconsider (Response) which was filed by the Plaintiff on July 31, 2008, the Plaintiff argues that the record establishes the Defendant was operating and controlling all aspects of his law firm at the time of the events relied upon by the court to sustain his objection to discharge under § 523(a)(5), and the Defendant's failure to sufficiently explain the dissipation of assets cannot be imputed to the court-appointed receiver who was unable to provide the Plaintiff with adequate documentation thereof.

"A motion to reconsider a judgment is a species of petition to alter or amend that judgment under [Federal Rule of Civil Procedure] 59(e)." *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." FED. R. CIV. P. 59(e).[2] "Motions to alter or amend [a] judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1998) (internal citations omitted); *see also In re Barber*, 318 B.R. 921, 923 (Bankr.M.D.Ga.2004) (Rule 59(e) "can only be used in limited circumstances, and should be used sparingly.").

On the other hand, a party may not reargue his case through a motion under Rule 59(e), *In re No–Am Corp.*, 223 B.R. 512, 514 (Bankr.W.D.Mich.1998), "[n]or should Rule 59(e) be viewed as a means for overcoming one's failure to litigate matters fully." *Condor One, Inc. v. Homestead Partners, Ltd. (In re Homestead Partners, Ltd.)*, 201 B.R. 1014, 1018 (Bankr.N.D.Ga.1996); *see also Mathis v. United States (In re Mathis)*, 312 B.R. 912, 914 (Bankr.S.D.Fla.2004) ("The func-

---

1. By this adversary proceeding, the Plaintiff also seeks a denial of the Debtor's discharge under 11 U.S.C.A. § 727(a)(2)(A) and (4)(D) (West 2004), but did not seek summary judgment on these grounds.

2. Here, because the court's ruling on the Plaintiff's Motion For Partial Summary Judg-

ment was not fully dispositive of all issues, the July 17, 2008 Order is interlocutory and the ten (10) day filing period on Rule 59(e) is not yet in play. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 Fed.Appx. 942, 946 (6th Cir.2004). The court will nonetheless dispose of the Motion to Reconsider.

tion of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory ... [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment."). "Arguments and evidence which could have been presented earlier in the proceedings cannot be presented in a Rule 59(e) motion." *In re See,* 301 B.R. 554, 555 (Bankr.N.D.Iowa 2003).

■■■ In his Motion to Reconsider, the Defendant avers that in response to the Plaintiff's Motion for Partial Summary Judgment (Motion for Partial Summary Judgment) filed on March 14, 2008, he "spent a substantial amount of time documenting for the record that the law firm in which [he] was a member was in [sic] a corporation [and] that law firm was placed into a separate receivership in Knox County Chancery Court and that the receivership dealt with all of the assets and business records of that entity." MOT. TO RECONSIDER at ¶ 3. Along those lines, he also states that in the six months prior to the commencement of his bankruptcy case, all business records and assets of the law practice were in the hands of a third party, the receiver, arguing that the assets of the law firm were not scheduled in his personal bankruptcy statements and schedules, and he was not in town when the receiver took possession of the firm's assets and records. The Defendant also states that "[t]he fact that the Plaintiff simply did not want to review the funds on deposit in [the firm's] accounts to determine where the funds were paid and how they were paid subsequent to December 1999 by the receiver or by the law firm prior to the receivership is not a basis to assert the Defendant failed to provide for the whereabouts of such

funds." MOT. TO RECONSIDER at ¶ 7. Finally, he argues that the Plaintiff did not meet "his burden to explain he had reviewed the bank records of the [Defendant] and whether such records did or did not reveal the disbursement of funds" and there was a clear error of law by the court in granting the Motion for Partial Summary Judgment and denying discharge based upon the Defendant's failure to explain the disposition of funds. MOT. TO RECONSIDER at ¶ 5.

The Defendant's focus in support of his Motion to Reconsider is his contention that he, personally, was not responsible for the funds that were paid into his law firm's accounts and that any misappropriation or loss of those funds cannot, therefore, be imputed to him, such as to deny his discharge under § 727(a)(5). The court disagrees and finds that the Defendant has not shown clear error of law, presented newly discovered evidence, evidenced an intervening change in controlling law, or demonstrated that the July 17, 2008 Order is manifestly unjust.

Although the Plaintiff's Complaint, filed on April 27, 2001 as amended on June 29, 2001, objected to the Defendant's discharge under 11 U.S.C.A. § 727(a)(2)(A), (3), (4)(D), and/or (5), his Motion for Partial Summary Judgment only addressed § 727(a)(3) and (5). The record relied upon by the court consisted of the following: (1) Plaintiff's Statement of Undisputed Material Facts incorporating as exhibits thereto the Amended Complaint, the Answer, the Affidavit of Mary Katherine Trowbridge, a Transcript of Proceedings dated December 7, 1999, in Case No. 27339(L), styled *Assetcare, Inc. v. Lufkin, et al.,* in the Chancery Court for Sullivan County, Tennessee, the Affidavit of Brent Semple, the Affidavit of Suzanne Mechlem, the Affidavit of William T. Hendon, Trustee, the Defendant's Statement of Financial Affairs, Summary of Schedules, Sched-

ule B—Personal Property, and Declaration Concerning Debtor's Schedules filed August 11, 2000, a transcript of the Deposition of David A. Lufkin, Sr. taken January 11, 2008, and the Stipulation Regarding Testimony of Lori Lufkin; (2) the Defendant's Statement of Undisputed Facts; and (3) the Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, incorporating two excerpts from the deposition of Mary Trowbridge.

Of these exhibits, the Affidavits of Mr. Semple, president of C. Garth Semple & Associates, Inc., and Ms. Mechlem, an employee in the legal department of General Revenue Corporation, both former clients of the Defendant's, focused primarily upon money collected on behalf of their respective companies by the Defendant which was never disbursed to them. The court went into considerable detail in the Memorandum Opinion and will not restate that evidence here; however, it will reiterate that the Affidavits and the documents attached thereto evidenced a scheme perpetrated by the Defendant of misinformation in his firm's records and mishandling of monies belonging to his clients. Furthermore, the events outlined by Mr. Semple and Ms. Mechlem in their Affidavits occurred prior to December 1999, with the exception of one payment of $358.40 which was received by General Revenue Corporation on May 22, 2000. *See* MEM. OP. at 16–19.

The Defendant argues that his law firm was a separate corporate entity and that he was not personally responsible for monies deposited into his firm's trust account but not remitted to clients. It is undisputed and the record reflects that, prior to December 1999, the Defendant engaged in the practice of law and operated a law practice under the names of David A. Lufkin, David A. Lufkin, Attorney, David A. Lufkin, P.C., and Lufkin, Henley & Connor, PLLC. MEM. OP. at 4 (citing COMPL. at ¶ 4; ANS. at ¶ 4). This is further confirmed by Ms. Trowbridge, the former financial officer for the Defendant and his law firm entities, *see* TROWBRIDGE AFF. at ¶ 4, and reflected by a deposit slip for the Tennessee Bar Foundation Iolta Account for David A. Lufkin, P.C., Mgmt. Member of Lufkin Henley & Conner, PLLC (Trust Account) attached as a collective exhibit to the Affidavit of Mary Trowbridge. MEM. OP. at 15–16; TROWBRIDGE AFF. at ¶¶ 7, 10; COLL. EX. B. Nevertheless, the record also reflects that "[i]rrespective of the name of the firm at the time, [the Defendant] controlled the day-to-day operation of the business, including all financial aspect[s] of the practice, including deposits, withdrawals, disbursements to clients, and payroll[,]" TROWBRIDGE AFF. at ¶ 4, and that she performed her duties under the personal supervision and direction of the Defendant. MEM. OP. at 14; TROWBRIDGE AFF. at ¶¶ 2–3.

Under Tennessee law, professional corporations, which "may render professional services ... only through individuals licenced or otherwise authorized ... to render the services[,]" TENN.CODE ANN. § 48–101–607(a) (2002), are governed by statute, that, with respect to the issue of personal liability, are unambiguous. "Each individual who renders professional services as an employee of a domestic or foreign professional corporation is liable for such individual's own negligent or wrongful acts or omissions to the same extent as if that individual rendered the services as a sole practitioner." TENN.CODE ANN. § 48–101–621 (2002). The same holds true with respect to limited liability companies. *See* TENN.CODE ANN. § 48–217–101(a)(3) (2002) (stating that notwithstanding the absence of personal liability for actions or obligations of the LLC or other members and/or employees, "a member, holder of financial interest, governor, manager, employee or other agent may become personally liable in contract, tort, or otherwise by

reason of such person's own acts or conduct."). The Defendant cannot hide behind the legal fiction that David A. Lufkin, P.C. and/or Lufkin, Henley & Connor, PLLC are separate entities in order to escape liability nor can he escape culpability for his own actions by attempting to lay blame at the feet of a court-appointed receiver or his former financial officer.

Furthermore, the Defendant mistakenly characterizes the Plaintiff's burden of proof under § 727(a)(5) by asserting that he "simply did not want to review the funds on deposit in [the] accounts [which had been seized by the receiver] to determine where the funds were paid and how they were paid subsequent to December 1999 by the receiver or by the law firm prior to the receivership[.]" MOT. TO RECONSIDER at ¶ 7. The Plaintiff's initial burden of proof under § 727(a)(5) required merely that he demonstrate that "(1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question." MEM. OP. at 12–13 (citing *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D.Ky.1999)). The court found and the record reflects that the Plaintiff established that $14,415.23 which should have been paid to Mr. Semple and $13,573.17 which should have been paid to General Revenue Corporation were deposited into the Defendant's trust account but never remitted. MEM. OP. at 20; SEMPLE AFF. at ¶ 4; MECHLEM AFF. at ¶¶ 7–10; TROWBRIDGE AFF. at ¶ 7. Additionally, it is Ms. Trowbridge's undisputed testimony that in November and December 1999, the Defendant deposited more than $70,000.00 into his trust account, *see* TROWBRIDGE AFF. at ¶ 11, but these funds were not in his possession on June 14, 2000, when his involuntary bankruptcy petition was commenced, and the Defendant has not offered any explanation, in his statements and schedules or otherwise, as to their dissipation.

The Defendant also cites to Rule 60 of the Federal Rules of Civil Procedure in his Motion to Reconsider, which states, in material part, that "the court may relieve a party … from a final judgment, order, or proceeding[.]" FED.R.CIV.P. 60(b). The Order entered on July 17, 2008, however, is interlocutory, and by its very terms, Rule 60 does not apply. *See also Newton v. Herskowitz (In re Gatlinburg Motel Enters., Ltd.)*, 119 B.R. 955, 968 (Bankr.E.D.Tenn.1990) ("Interlocutory orders and judgments are … not within the restrictive provisions of 60(b)[.]").

In short, the underlying record relied upon by the court and outlined in the July 17, 2008 Memorandum Opinion supports the denial of the Defendant's discharge under § 727(a)(5). Accordingly, the Motion for Reconsideration is DENIED.